# Exhibit 3

Donald Charles Schwartz [SBN 122476]
Law Offices of Donald C. Schwartz
7960-B Soquel Drive, No. 291
Aptos, CA 95003
831-331-9909; Facsimile 831-662-9892
triallaw@cruzio.com

Attorney for Plaintiff
Donald Ray Hopkins

FILED
ALAMEDA COUNTY

OCT 2 2 2012

CLERK OF THE SUPERIOR COURT
By _____
Deputy

SUPERIOR COURT OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA

DONALD RAY HOPKINS,

           Plaintiff,

    vs.

AMERICAN HOME MORTGAGE
SERVICING, INC., a Delaware Corporation
registered to do business in the State of
California; CITIBANK, AMERICAN
BROKERS CONDUIT, a form of business
unknown, and DOES 2 to 1,000,

           Defendants.

Case No. RG11581294

THIRD AMENDED COMPLAINT FOR
DAMAGES AND EQUITABLE RELIEF

BY FAX

COMES NOW PLAINTIFF DONALD RAY HOPKINS who alleges as follows:

**PARTIES**

   [1]    At all times relevant herein plaintiff Donald Ray Hopkins (hereinafter referred to as "plaintiff" or "plaintiff Hopkins") has been the owner of that residential real property located in the City of Oakland, County of Alameda, commonly referred to as 18050 Broadway Terrace, Oakland, CA (hereinafter referred to as "the Subject Real Property.") Plaintiff Hopkins is a gentleman of 74 years of age, a holder of four college degrees, e.g., Kansas, Yale, Harvard and U.C. Berkeley, and a

**THIRD AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**    1

member of Phi Beta Kappa. Plaintiff Hopkins retired after over 22 years of service with the United States Congress as District Administrator of the Eighth California Congressional District, has owned three previous homes in Oakland and Berkeley since 1972 and had never been delinquent in even one monthly payment. With a regular source of income, plaintiff Hopkins had not so much as a complaint of non-payment until AHMSI for some unknown, arbitrary and capricious reason began complaining of non-payment, bounced check(s). Defendant Citibank records clearly show that every relevant payment was made in a timely manner.

[2]     At all times relevant, defendant American Brokers Conduit ("ABC") is and was a lender of home loans within the City of Oakland, California, including at the Subject Real Property. Defendant ABC negligently hired defendant American Home Mortgage Servicing, Inc. ("AHMSI") and is otherwise jointly and severally responsible and liable as respondeat superior for any and all acts of AHMSI.

[3]     At all times relevant, defendant American Home Mortgage Servicing, Inc. ("AHMS") claims to have been in the business of servicing home loans for American Brokers Conduit ("ABC") within the City of Oakland, County of Alameda, California, including at the Subject Real Property. At all times relevant, defendant AHMSI is and has been the agent for its principal, defendant ABC, thereby holding defendant ABC liable for all acts, facts and events engaged by defendant AHMSI in the course and scope of servicing the Loan. However, at no time have defendants ABC or AHMSI ever complied with federal law under the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. 2605, by having issued a notice to plaintiff Hopkins that AHMSI was a servicer of the subject loan. Therefore, defendants ABC and AHMSI are hereby estopped from asserting any defenses under federal and California state law that otherwise might be available to any servicer of a loan.

[4]     At all times relevant, defendant Citibank is a business entity, form unknown, engaged in

**THIRD AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**                    2

1  the business of banking within the City of Oakland, California.  Defendant Citibank was originally

2  named in this action as Doe 1.

3

4  [5]  The true names and capacities, whether individual, corporate, associate or otherwise of

5  defendants Does 2 through 1,000, inclusive, are unknown to plaintiff at this time, who therefore sues

6  said defendants by such fictitious names and when the true names and capacities of such defendants

7  have been ascertained, plaintiff will amend this complaint accordingly.  Plaintiff is informed and

8  believes, and thereupon alleges, that each defendant designated herein as a Doe is responsible,

9  negligently, intentionally or in some manner, for the acts, facts, events, representations and happenings

10 hereinafter referred to, and caused injuries and damages proximately thereby to plaintiff, as hereinafter

11 alleged, either through said defendants' own intentional, negligent, fraudulent or other conduct or

12 through the conduct of its agents, servants or employees, or in some other manner.  Plaintiff is informed

13 and believes, and thereupon alleges, that at all times stated herein defendants, and each of them, were

14 the agents, servants, employees, alter egos, and/or joint venturers of their co-defendants and were as

15 such acting within the scope, course and authority of such agency, employment and/or joint venture, and

16 that each and every defendant, as aforesaid, when acting as a principal, was negligent in the selection

17 and hiring of each and every other defendant as agent, servant, employee and/or joint venturer.

18

19 [6]  As such, each said defendant is responsible, negligently, intentionally or in some manner,

20 for the acts, facts, events, representations and happenings hereinafter referred to, and caused injuries and

21 damages proximately thereby to plaintiff, as hereinafter alleged, either through said defendants' own

22 intentional, negligent, fraudulent or other conduct or through the conduct of its agents, servants or

23 employees, or in some other manner.  At all times stated herein defendants, and each of them, were the

24 agents, servants, employees, alter egos, and/or joint venturers of their co-defendants and were as such

25 acting within the scope, course and authority of such agency, employment and/or joint venture, and that

**THIRD AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**          3

1    each and every defendant, as aforesaid, when acting as a principal, was negligent in the selection and

2    hiring of each and every other defendant as agent, servant, employee and/or joint venturer.

### GENERAL ALLEGATIONS

5    [7]    On or about October 24, 2006 plaintiff Donald Ray Hopkins and defendant ABC entered

6    into an agreement wherein defendant ABC agreed to, and did, loan plaintiff Hopkins, $815,000.00

7    ("financial consideration") secured by a First Deed of Trust on the Subject Real Property, in return for

8    plaintiff Hopkins paying off the loan pursuant to the terms and conditions stated in the Loan Agreement

10   and Adjustable Rate Note ("Note").   A true and correct copy of the Note is attached hereto and attached

11   as Exhibit 1.

12   [8]    Commencing on December 1, 2006, plaintiff Hopkins made all payments in a timely

13   fashion according to the terms of the Note.   Plaintiff made his payments from an established account at

14   defendant Citibank via electronic check.   At all times relevant, plaintiff maintained ample funds for

16   timely payment to be drawn therefrom.

17   The Note with defendant ABC states:

18   "I (borrower) will make monthly payments on the 1st of each month beginning on
19   December 1, 2006."

20   See, Exhibit 1 Note, par. 3(A).

21   The Note further states:

23   "If the Note Holder has not received the full amount of any monthly payment by the end of
     15 calendar days *after the date it is due*, I will pay a late charge to the Note Holder."
24   [emphasis supplied]

25   See, Exhibit 1 Note, par. 7(A).

26   Because the Note monthly payments are due on the first of the month and deemed subject to a late

27   charge 15 days *after the due date*, neither defendant ABC nor defendant AHMSI may charge a late fee

### THIRD AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF                    4




1   before a date after the 16th of each month, e.g., *the 17th of the month would be the first opportunity to*

2   *charge a late fee.*

4   [9]   The federal Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. 2605, requires

5   that lenders and servicers, such as defendants ABC and AHMSI, provide notice to borrowers like

6   plaintiff when the lender assigns, sells or *transfers in any way* the servicing of the mortgage loan.  At no

7   time have defendants ABC or AHMSI provided any such RESPA notice to plaintiff Hopkins stating that

8   defendant ABC had assigned, sold or transferred or in any way the servicing of the mortgage loan (e.g.,

9   Note) to defendant AHMSI.  In fact, as part of the loan package provided to plaintiff Hopkins is a

10  RESPA SERVICING DISCLOSURE.   A true and correct copy of the RESPA SERVICING

11  DISCLOSURE provided to plaintiff Hopkins is attached hereto as Exhibit 2.  RESPA requires that all

12  RESPA disclosures be acknowledged with a signature by the borrower.  The RESPA SERVICING

13  DISCLOSURE copy provided to plaintiff Hopkins is not executed.  Nevertheless, the document states:

16      "NOTICE TO FIRST LIEN MORTGAGE APPLICANTS: THE RIGHT TO
17      COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED.
        FDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS."

18      The RESPA SERVICING DISCLOSURE further states:

20          "Servicing Transfer Estimates
            1.    The following is the best estimate of what will happen to the servicing of
21      your mortgage loan:
            We may assign, sell or transfer the servicing of your loan while the loan is
22      outstanding.  *We are able to service your loan and we haven't decided whether to*
        *service your loan.*" [emphasis supplied]

24      [10]   Simply stated, the so-called RESPA SERVICING DISCLOSURE is both contradictory

26  and nonsensical.

27      [11]   On information and belief, at the time the subject Note agreement was entered into

28  between plaintiff and defendant ABC, defendant AHMSI was a wholly owned subsidiary of defendant

**THIRD AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**                     5

ABC.

[12]   On information and belief, sometime after the close of escrow, defendant ABC divested itself of defendant AHMSI and reformulated itself as a separate business entity— present form unknown.

[13]   At no time have defendants ABC and AHMSI sent any notice required under RESPA officially informing plaintiff that defendant AHMSI was assuming service of the Subject Loan from defendant ABC.

[14]   On March 30, 2012 (during the pendency of this action) plaintiff Hopkins sent a Qualified Written Request ("QWR") to defendant AHMSI. A true and correct copy of the QWR is attached hereto as Exhibit 3. Instead of providing the information requested, defendant AHMSI defiantly refused to provide the requested information. For example, knowing full well that an actual litigation was pending wherein plaintiff contends (and still does) that he has made every single relevant payment on the Note in a timely fashion, defendant AHMSI contended that the loan documents had nothing to do with the servicing of the Note. A true and correct copy of defendant AHMSI's response is attached hereto as Exhibit 4.

[15]   Despite plaintiff having made all payments in a timely fashion on the Loan, defendants AHMS and ABC declared the Loan in default, initiated collection activities against plaintiff Hopkins, defamed his otherwise impeccable credit and initiate foreclosure against his home.

[16]   As a result of the conduct of defendants, and each of them, said defendants prevented plaintiff Hopkins from selling the home. Now, in a Catch 22 in that defendants' refuse to honor all of plaintiff's timely Loan payments while also now interfering with plaintiff's efforts to sell the home, plaintiff Hopkins has no remedy but to seek legal redress for his injuries from the court.

Plaintiffs further alleges as follows:

**THIRD AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**          6

## FIRST CAUSE OF ACTION
(Breach of Contract against Defendant ABC)

[17]   Plaintiff by this reference incorporates paragraphs 1 through 16, inclusive, as if fully set forth in this Third Amended Complaint for Equitable Relief and Damages as if fully re-alleged herein.

[18]   On or about October 24, 2006 plaintiff Donald Ray Hopkins and defendant ABC entered into an agreement wherein defendant ABC loaned plaintiff Hopkins $815,000.00 ("financial consideration") secured by a First Deed of Trust on the Subject Real Property, in return for plaintiff Hopkins paying off the loan pursuant to the terms and conditions stated in the Loan.

[19]   At all times relevant, plaintiff Hopkins has made timely payments on the Loan, pursuant to the terms of the Exhibit 1 Note agreement.

[20]   Despite plaintiff making timely payments on the Loan, defendant ABC, through its agent for servicing the loan (e.g., defendant AHMSI), declared the loan in default, initiated collection activities against plaintiff Hopkins, defaming his otherwise impeccable credit and initiated foreclosure by, inter alia, recording a Notice of Default on the title of plaintiff's home.

[21]   As a result of the conduct of defendant ABC and its agent, defendant AHMSI, and each and every Doe defendant, said defendants prevented plaintiff Hopkins from selling the home. Now, in a Catch 22 in that defendants refuse to honor all of plaintiff's timely loan payments while also interfering with plaintiff's efforts to sell the home, plaintiff Hopkins has no remedy but to seek legal redress for his injuries from the court.

[22]   As a direct and proximate cause of the breach of contract of defendants ABC and each and every Doe named herein, plaintiff has suffered and will continue to suffer monetary damages in a sum in excess of the minimum jurisdiction of the Superior Court and otherwise according to proof at trial.

WHEREFORE, plaintiff Hopkins prays judgment against defendant ABC, and each and every

**THIRD AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**                    7

Doe defendant, as further set forth below.

## SECOND CAUSE OF ACTION
(Specific Performance against Defendant ABC)

[23]   Plaintiff by this reference incorporates paragraphs 1 through 22, inclusive, as if fully set forth in this Third Amended Complaint for Equitable Relief and Damages as if fully re-alleged herein.

[24]   Defendant ABC is in breach of the Exhibit 1 Note agreement.

[25]   Plaintiff hereby respectfully seeks an order of this court requiring defendant ABC, and each and every Doe defendant, to honor all Loan payments made by plaintiff on the subject Loan and remove the Notice of Default from the title on plaintiff's real property, cease all foreclosure operations and restructure the loan.

WHEREFORE, plaintiff Hopkins prays judgment against defendant ABC, and each and every Doe defendant, as set forth below.

## THIRD CAUSE OF ACTION
(Quiet Title by Extinction of Deed of Trust against Defendant ABC)

[26]   Plaintiff by this reference incorporates paragraphs 1 through 25, inclusive, as if fully set forth in this Third Amended Complaint for Equitable Relief and Damages as if fully re-alleged herein.

[27]   By operation of the facts set forth herein, plaintiff is entitled to an order of this court extinguishing defendants' Deed of Trust on the Subject Real Property.

WHEREFORE, plaintiff Hopkins prays judgment against defendant ABC, and each and every Doe defendant, as set forth below.

## FOURTH CAUSE OF ACTION
(Declaratory Relief against Defendant ABC)

[28]   Plaintiff by this reference incorporates paragraphs 1 through 27, inclusive, as if fully set forth in this Third Amended Complaint for Equitable Relief and Damages as if fully re-alleged herein.

**THIRD AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**                    8

[29]   There exists a controversy as between plaintiff, on the one hand, and defendant ABC and each and every Doe defendant, on the other hand, as to whether or not said defendants have breached the subject Exhibit 1 Note agreement and whether or not as a matter of law and/or equity the subject Loan and deed of trust should simply be extinguished from the recorded chain of title on the Subject Real Property.

[30]   Plaintiff hereby seeks an appropriate order declaring his rights, on the one hand, and the duties defendants, and each of them, on the other hand.

WHEREFORE, plaintiff Hopkins prays judgment against defendant ABC, and each and every Doe defendant, as set forth below.

## FIFTH CAUSE OF ACTION
### (Negligence against Defendants ABC and AHMSI)

[31]   Plaintiff by this reference incorporates paragraphs 1 through 30, inclusive, as if fully set forth in this Third Amended Complaint for Equitable Relief and Damages as if fully re-alleged herein.

[32]   On information and belief, defendant ABC and defendant AHMSI entered into an agreement to the effect that defendant AHMSI would service the subject loan.  On information and belief, the duties of defendant AHMSI were and remain to receive plaintiff's loan payments, accurately account for plaintiff's payments and not to charge late fees and initiate foreclosure procedures unless permitted to do so under the terms of the Exhibit 1 Note.

[33]   On information and belief, after the conclusion of the subject escrow in or about November 1, 2006, plaintiff began making monthly payments on the Loan to defendant AHMSI.

[34]   Since the close of escrow on the subject loan, plaintiff has made all relevant monthly payments on defendant ABC home loan on a timely and accurate basis to defendant AHMSI.

[35]   Defendant AHMSI has received all such timely and accurately made payments from

**THIRD AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**          9

plaintiff.

[36]   Defendants ABC and AHMSI owed plaintiff a duty of due care not to initiate collection activities, charge late fees and/or initiate foreclosure against plaintiff if plaintiff's payments were at all times accurately and timely made.

[37]   Defendants ABC and AHMSI breached their duty of due care by initiating collection activities, charging late fees and initiating foreclosure against plaintiff and his real property after having received all relevant monthly loan payments in the correct amounts and in a timely fashion from plaintiff Hopkins.

[38]   As a proximate cause of the breach of the duty of due care of defendant ABC and AHMSI owed to plaintiff Hopkins, said plaintiff has suffered injuries thereby, including, but not limited to, general and special damages according to proof at time of trial.

WHEREFORE, plaintiff Hopkins prays judgment against defendants ABC, AHMSI and each and every Doe defendant, as set forth below.

## SIXTH CAUSE OF ACTION
(Negligence against Defendant Citibank)

[39]   Plaintiff by this reference incorporates paragraphs 1 through 38, inclusive, as if fully set forth in this Third Amended Complaint for Equitable Relief and Damages as if fully re-alleged herein.

[40]   Defendant Citibank agreed to accept plaintiff's monies on deposit in a checking account.

[41]   Defendant Citibank agreed to make electronic check payments in furtherance of plaintiff's instructions.

[42]   Plaintiff gave Citibank monthly instructions from on or about the time of close of escrow of the subject loan through to a time, after on or about this civil action was initiated to make timely and proper transfers from his checking account to defendant AHMSI in payment on the defendant ABC

**THIRD AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**          10

Loan.

[43]    At all times relevant herein, plaintiff maintained ample funds in his defendant Citibank account to cover the monthly electronic funds transfers to defendant ABC – through defendant AHMSI.

[44]    On information and belief, despite the fact that ample funds were maintained by plaintiff in his defendant Citibank checking account, said defendant bounced electronic checks made payable to either defendant ABC or AHMSI.

[45]    Defendant Citibank owed plaintiff a duty of due care not to bounce plaintiff's electronic checks if adequate funds existed in his defendant Citibank checking account.

[46]    Defendant Citibank breached its duty of due care owed to plaintiff by bouncing electronic checks made for the subject loan payments, despite the fact that plaintiff maintained adequate funds on deposit.

[47]    As a proximate cause of the breach of the duty of due care of defendant Citibank owed to plaintiff Hopkins, said plaintiff has suffered injuries thereby, including, but not limited to, general and special damages according to proof at time of trial.

WHEREFORE, plaintiff Hopkins prays judgment against defendants and each of them, as set forth below.

## SEVENTH CAUSE OF ACTION
(Slander of Title against Defendants ABC and AHMSI)

[48]    Plaintiff by this reference incorporates paragraphs 1 through 47, inclusive, as if fully set forth in this Third Amended Complaint for Equitable Relief and Damages as if fully re-alleged herein.

[49]    Defendants ABC and its agent, defendant AHMSI, recorded a Notice of Default with the Recorder's Office of the County of Alameda.  The Notice of Default states that plaintiff is in default on the loan payments to said defendants.  The recordation of the Notice of Default constitutes a publication.

**THIRD AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**        11

[50]    Said defendants' recordation of the Notice of Default on the title of plaintiff's home was without justification because plaintiff was current on all loan monthly payments.

[51]    The Notice of Default was false.

[52]    Plaintiff suffered a direct monetary loss in that his home could not be marketed or sold.

[53]    Plaintiff suffered other general and special damages according to proof at time of trial.

WHEREFORE, plaintiff Hopkins prays judgment against defendant ABC and AHMSI and each and every other Doe defendant, as set forth below.

## EIGHTH CAUSE OF ACTION
(RESPA Violation against Defendants ABC and AHMSI)

[54]    Plaintiff by this reference incorporates paragraphs 1 through 53, inclusive, as if fully set forth in this Third Amended Complaint for Equitable Relief and Damages as if fully re-alleged herein.

[55]    Pursuant to 12 U.S.C. 2605, defendants ABC and AHMSI have a duty to notify borrowers like plaintiff when the lender (e.g., defendant ABC) assigns, sells or transfers in any way the servicing of the mortgage loan.

[56]    On information and belief, servicing of the subject loan was assigned, sold or in some way transferred from defendant ABC to defendant AHMSI either at the initiating of the loan or when defendant ABC divested defendant AHMSI.

[57]    Defendants ABC and AHMSI are subject to a statutory fine under 12 U.S.C. 2605 as well as damages and attorney's fees and costs.

WHEREFORE, plaintiff Hopkins prays judgment against defendant ABC and AHMSI and each and every other Doe defendant, as set forth below.

## NINTH CAUSE OF ACTION
(Breach of Contract against Defendant AHMSI by Intended Third Party Beneficiary)

[58]    Plaintiff by this reference incorporates paragraphs 1 through 57, inclusive, as if fully set

**THIRD AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**          12

forth in this Third Amended Complaint for Equitable Relief and Damages as if fully re-alleged herein.

[59]   On or about October 24, 2006 plaintiff Donald Ray Hopkins and defendant ABC entered into an agreement wherein defendant ABC loaned plaintiff Hopkins $815,000.00 ("financial consideration") secured by a First Deed of Trust on the Subject Real Property, in return for plaintiff Hopkins paying off the loan pursuant to the terms and conditions stated in the Loan.

[60]   On information and belief, defendant ABC engaged a servicing agreement with defendant AHMSI with the intention that defendant AHMSI service the Loan pursuant to its terms. As such, plaintiff Hopkins is the intended beneficiary of the defendants ABC-AHMSI servicing agreement.

[61]   At all times relevant, plaintiff Hopkins has made timely payments on the Loan, pursuant to the terms of the Exhibit 1 Note agreement.

[62]   Despite plaintiff making timely payments on the Loan and defendant AHMSI's agreement with defendant ABC to service the Loan according to its terms, thereby making plaintiff an intended third party beneficiary, defendant AHMSI illegally declared the Loan in default, initiated collection activities against plaintiff Hopkins, defaming his otherwise impeccable credit and initiated foreclosure by, inter alia, recording a Notice of Default on the title of plaintiff's home.

[63]   As a result of the conduct of defendant AHMSI, and each and every Doe defendant, said defendants prevented plaintiff Hopkins from selling the home. Now, in a Catch 22 in that defendants refuse to honor all of plaintiff's timely loan payments and interfering with plaintiff's efforts to sell the home, plaintiff Hopkins has no remedy but to seek legal redress for his injuries from the court.

[64]   As a direct and proximate cause of the breach of the defendants ABC and AHMSI servicing agreement, for which plaintiff is the intended third party beneficiary, plaintiff has suffered and will continue to suffer monetary damages in a sum in excess of the minimum jurisdiction of the Superior Court and otherwise according to proof at trial.

**THIRD AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**          13



WHEREFORE, plaintiff Hopkins prays judgment against defendants, and each of them, as further set forth below.

### FOURTH CAUSE OF ACTION
[Fraud against Defendant Citibank]

[65]    Plaintiff by this reference incorporates paragraphs 1 through 64, inclusive, as if set forth in this Second Amended Complaint for Equitable Relief and Damages and as if fully re-alleged herein.

[66]    At all times relevant, on or about the month of May 2011 to the present time, defendant Citibank Personal Bankers David McGuiness and John Oushana were the highest policy level employees stationed by said defendant at its Redwood Road Branch located in Oakland, California.

[67]    Since that time, and continuously to the present, Messrs. McGuiness and Oushana as the managing policy level representatives of defendant Citibank have repeatedly engaged evasive conduct in successfully avoiding delivering to plaintiff Don Hopkins a copy of the July 2010 electronic check, e.g., the check that defendants ABC and AHMSI state bounced and based upon which defendants ABC and AHMSI initiated foreclosure and filed a Notice of Default.  For example, in or about Spring, 2012 Personal Banker Oushana informed plaintiff that copies of electronic checks are not available.  When confronted with a copy of the August 2012 cancelled electronic check, Mr. Oushana stated that he would get the subject check. Simply stated, he never did and now refuses to do so.

[68]    Without a copy of the cancelled July 2010 electronic check made payable to defendant AHMSI, plaintiff was unable to prove to defendants ABC and AHMSI that he timely and accurately made the July 2010 mortgage payment.

[69]    As a result of the conduct of defendant Citibank in intentionally suppressing the July 2010 electronic check, said defendant prevented plaintiff Hopkins from curing the default and selling the home.

THIRD AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF          14

[70]   As a direct and proximate cause of the fraudulent concealment of defendant Citibank, plaintiff has suffered and will continue to suffer monetary damages in a sum in excess of the minimum jurisdiction of the Superior Court and otherwise according to proof at trial.

[71]   Defendant Citibank's above-stated conduct and concealments and misrepresentations were misleading, false and fraudulent.   At the time said defendant engaged the conduct and made the

[2]   For special damages according to proof, including, but not limited to; the entire amount of any and all sums alleged due under the Subject Loan;

[3]   For a Temporary Restraining Order, Preliminary and Permanent Injunctions preventing defendants, and each of them, from continuing to defame, libel, slander, collect, foreclose or enforce in any way on plaintiff Hopkins and/or the Subject Real Property;

[4]   For an order quieting the title to the Subject Real Property sufficient to extinguish the subject Loan and any related deed of trust;

[5]   For an order declaring the rights and responsibilities of the plaintiff, on the one hand, and defendant, and each of them, on the other hand, e.g., that defendants, and each of them, take nothing pursuant to the Subject Loan;

[6]   RESPA damages and fines as well as attorney's fees and costs of suit;

[7]   For exemplary and punitive damages according to proof;

[7]   For attorney's fees, according to proof;

[8]   For costs of suit herein incurred; and

[9]   For such other and further relief as the Court may deem just and proper.

Dated: 10/22/2012

_____
Donald Charles Schwartz
Attorney for Plaintiff
Donald Ray Hopkins

**THIRD AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**    16

## PROOF OF SERVICE BY MAIL/FACSIMILE

I declare that I am employed in the County of Santa Cruz, California; that I am over the age of eighteen and am not a party to the foregoing action. My business address is 7960-B Soquel Drive, No. 291, Aptos, CA 95003.

On the date shown below, I served the following document(s):

## THIRD AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

on each person named below by placing a copy in an envelope addressed as shown below and placing the envelope for collection and mailing on the date and at the place shown above following our ordinary business practices. I am readily familiar with this business practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid and as set forth in the accompanying facsimile transmission page, if any.

Rachel M. Dollar, Esq./Sherrill Oats, Esq.
Smith Dollar, PC
404 Mendocino Avenue, Second Floor
Santa Rosa, CA 95401
Fax: 707-522-1101
For: American Home Mortgage Servicing, Inc.

Stuart B. Wolfe, Esq./Kimberley A. Paese, Esq.
Wolfe & Wyman, LLP
2175 North California Blvd., Suite 645
Walnut Creek, California 94596-3502
Fax: 925-280-0005
For: Citibank

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that this declaration was executed on October 22, 2012 in Santa Cruz County, California.

Donald Charles Schwartz

**EXHIBIT 1**

## ADJUSTABLE RATE NOTE

### (12-MTA Index - Payment and Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. BECAUSE MY INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN _125.000%_ OF THE ORIGINAL AMOUNT (OR $ 1,018,750.00 ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

October 10, 2006      IRVINE                          California
                              (City)                              (State)

18050 BROADWAY TERRACE, Oakland, CA   94611
                         (Property Address)

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 815,000.00 _____ plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is   American Brokers Conduit
_____ . I will make all payments under this Note in form of cash, check or money order.  I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

### 2.  INTEREST

Interest will be charged on unpaid Principal until the full amount has been paid. I will pay interest at a yearly rate of _1.000_% until _October 31, 2006_, and the initial monthly payment provided for in Section 3(B) of this Note will be based on this rate (the "Initial Rate"). Commencing _November 1, 2006_, I will pay interest at a yearly rate of _8.308_ % (the "Subsequent Rate"). Thereafter, the interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the interest rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.  PAYMENTS

#### (A) Time and Place of Payments

I will pay Principal and interest by making payments every month.  In this Note, unless otherwise specified "payment" refers to the Principal and interest payment only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

I will make my monthly payments on _the 1st_ of each month beginning on _December 1, 2006_.  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each month my payment will be applied to interest before Principal.  If, on _November 1, 2046_, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at   PO Box 660029 Dallas, TX  75266-0029
_____ , or at a different place if required by the Note Holder.

AHM-7030N(MULT) (0106)

**(B) Amount of My Initial Monthly Payments**

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $ 2,060.78 , unless adjusted at an earlier time under Section 4(H) of this Note.

**(C) Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may further change on the   1st      day of December , 2006, and on that day every month thereafter. Each such date on which my interest rate could change is called a "Change Date."

**(B) The Index**

On each Change Date, my interest rate will be based on an Index . The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as the 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding _____ Three and 550 Thousandths                    percentage points  3.550   % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than Nine and 950 Thousandths _____ _____ percentage points   9.950   % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective every year commencing   December 1, 2007                         and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of

my monthly payment subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of this Note.

### (F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amounts of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.

### (G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the Maturity Date in substantially equal payments. Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion. For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

### (H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to ___125.000%___ of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that ___125.000%___ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the Maturity Date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

### (I) Required Full Monthly Payment

On the ___Five___ anniversary of the due date of the first monthly payment, and on that same day every ___Five___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

### (J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (K) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

CERTIFIED TO BE A
EXACT COPY

ESCROW OFFICER/ASSISTANT

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Miscellaneous Fees: I understand that the Note Holder will also charge a return item charge in an amount permitted and otherwise in accordance with Applicable Law in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. Lender reserves the right to change the fee from time to time without notice except as may be required by law.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of _____ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be _____ % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once for each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given to Borrower).

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

CERTIFIED TO BE THE ORIGINAL EXACT COPY OF THE ORIGINAL
ESCROW OFFICER/ASSISTANT

**8. GIVING OF NOTICES**

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower.

If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates

Doc # 944750/Image: 944750.prn          Page 5 of 6          Appl# 0303463698          ARM-3300M(MULTI)(0106)

the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents", contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED:

_____ (Seal)        _____ (Seal)
DONALD RAY HOPKINS      -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                                -Borrower

CERTIFIED TO BE A TRUE AND
EXACT COPY OF THE ORIGINAL
ESCROW OFFICER

**EXHIBIT 2**

# RESPA SERVICING DISCLOSURE

Lender: American Brokers Conduit
17 Skypark Circle, Suite 150
Irvine, CA 92614

NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. Section 2601 et seq.) you have certain rights under that Federal law.

This statement tells you about your rights. It also tells you what the chances are that the servicing on this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

## Transfer Practices and Requirements

If the servicing of your loan is assigned, sold or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you, upon the occurrence of certain business emergencies.

Notices must contain certain information. They must contain the date of the transfer of the servicing of your loan to the new servicer, and the name, address, and toll-free or collect-call telephone number of the new servicer, and toll-free or collect call telephone number of a person or department for both your present servicer and your new servicer to answer your questions. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

## Complaint Resolution

Section 6 of RESPA (12 U.S.C. Section 2605) gives you certain consumer rights, whether or not your loan servicing is transferred. If you send a "qualified written request" to your servicer, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

## Damages and Costs

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

## Servicing Transfer Estimates

1. The following is the best estimate of what will happen to the servicing of your mortgage loan:

   [X] We may assign, sell or transfer the servicing of your loan while the loan is outstanding. [X] We are able to service your loan and we □ will □ will not [X] haven't decided whether to service your loan.

   OR

   □ We do not service mortgage loans, □ and we have not serviced mortgage loans in the past three years. □ We presently intend to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer.

   □ We assign, sell or transfer the servicing of some of our loans while the loan is outstanding depending on the type of loan and other factors. For the program you have applied for, we expect to:

   □ sell all of the mortgage servicing        □ retain all of the mortgage servicing
   □ assign, sell or transfer ___% of the mortgage servicing

2. For all the first lien mortgage loans that we make in the 12-month period after your mortgage loan is funded, we estimate that the percentage of mortgage loans for which we will transfer servicing is:

   ___ [0 to 25%] or [NONE]        ___ 26 to 50%        X    51 to 75%        ___ [76 to 100%] or [ALL]

   This estimate □ does [X] does not include assignments, sales or transfers to affiliates or subsidiaries. This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3. □ We have previously assigned, sold, or transferred the servicing of federally related mortgage loans.

   OR

   [X] This is our record of transferring the servicing of the first lien mortgage loans we have made in the past:

| Year | Percentage of Loans Transferred | (Rounded to nearest quartile - 0%, 25%, 50%, 75% or 100%) |
|---|---|---|
| 2003 | 75 to 100% | |
| 2004 | 50 to 75% | |
| 2005 | 50 to 75% | |

This information □ does [X] does not include assignments, sales or transfers to affiliates or subsidiaries.

September 28, 2006                                  American Brokers Conduit
Date                                                Present Servicer or Lender

## ACKNOWLEDGMENT OF MORTGAGE LOAN APPLICANT

We have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below. I/We understand that this acknowledgment is a required part of the mortgage loan application.

Applicant  DONALD HOPKINS                  Date         Applicant                  Date

Applicant                                  Date         Applicant                  Date

**EXHIBIT 3**

# Donald Ray Hopkins
18050 Broadway Terrace
Oakland, CA 94611

March 30, 2012

American Home Mortgage Services, Inc.
Attention: Correspondence Dept.
P.O. Box 619063
Dallas, TX 75261-9063

Sent: Certified/Return Receipt Requested

Re: Loan Number: 0031415938: Donald R. Hopkins
Subject Address: 18050 Broadway Terrace, Oakland, CA, 94611

To Whom It May Concern:

Please accept this letter as a "Qualified Written Request" under Section 6 of the Real Estate Settlement Procedures Act (RESPA) to obtain copies of ALL documents pertaining to the origination of the above mentioned Clients' current mortgage on the referenced subject property. Please see below for a list of documents needed.

[1] Initial Loan Application and Final Loan Application
[2] Executed Notice of Right to Cancel (if refinance)
[3] Deed of Trust/All Riders
[4] Note and All Addendums/Riders
[5] Truth-in Lending Statements
[6] Itemization of Amount Financed
[7] Good Faith Estimates
[8] Estimated and Final Closing Statements (HUD)
[9] Appraisal
[10] Title Report
[11] Grant Deed(s)
[12] Copy of Loan Payment History – This must include all payments made, all fees incurred, any and all escrow account disbursements and how payments were applied

In addition to the above, please forward any and all disclosures, rate sheets,

etc. associated with the above transaction. Please note that all copies need to be clear and legible and all documents should be copied in their entirety.

In closing, I understand that under Section 6 of RESPA you are required to acknowledge my request within 20 business days and try to resolve any issues within 60 business days.

Please forward requested documentation as soon as possible and we look forward to working with you on a solution that benefits our mutual concerns.

Thank you for your time.

Sincerely,

Donald R. Hopkins

EXHIBIT 4



Allison Tussey

# SmithDollar pc
## ATTORNEYS AT LAW

404 Mendocino Avenue, Second Floor
Santa Rosa, California 95401

Telephone: (707) 522-1100
Facsimile: (707) 522-1101

E-Mail: atussey@smithdollar.com

May 8, 2012

VIA EMAIL & FIRST CLASS MAIL

Donald C. Schwartz, Esq.
Law Offices of Donald C. Schwartz
7960-B Soquel Drive, No. 291
Aptos, CA 95003
tmallaw@cruzio.com

Re:   *Hopkins v. AHMSI*
      Alameda County Superior Court Case no. RG11581294
      Our Client:   American Home Mortgage Servicing, Inc.
      Our File No:   80324-20836

Dear Mr. Schwartz:

American Home Mortgage Servicing, Inc. ("AHMSI"), defendant in the above-entitled matter, is in receipt of your client's March 30, 2012, letter. In Mr. Hopkins' letter, a copy of which is enclosed for your reference, he asserts he is making a Qualified Written Request ("QWR"). Please be advised that his letter does not qualify as a QWR in that it fails to include a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower (see 12 USCS § 2605(e)(1)(B)(ii)).

Additionally, the letter requests documents that do not concern servicing, such as the loan application, right to cancel, deed, title report, appraisal, etc. To qualify as a QWR, the correspondence must seek information relating to the servicing of the loan. (§ 2605(e)(1)(A)) RESPA defines "servicing" as receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan. (§ 2605(i)(3))  Hence, the documents he is requesting are not the proper subject of a QWR.

I am enclosing a copy of Mr. Hopkins' payment history. The payment history is being provided not in response to a QWR, as Mr. Hopkins' letter does not qualify as a QWR, but simply for your records.

231705

Donald Schwartz, Esq.
May 8, 2012
Page 2

In the spirit of cooperation, I hope that your client reviews and responds to the outstanding discovery, which is the subject of a pending Motion to Compel.

Thank you for your attention to this matter.

Respectfully,

Allison Tussey

AJT:sjg
Encl.

Cc: AHMSI

AMERICAN HOME MORTGAGE SERVICING, INC
1525 SOUTH BELTLINE ROAD
COPPELL, TX 75019

TELEPHONE NO.: 1-877-304-3100

CUSTOMER ACCOUNT ACTIVITY STATEMENT

DATE 07/11/11
PAGE 1

REQ BY HCV

DONALD RAY HOPKINS
MR DONALD C. SCHWARTS
ATTORNEY AT LAW
7960 SOQUEL DR., SUITE 291
APTOS          CA 94003

LOAN NUMBER: 0031415938

---- CURRENT ACCOUNT INFORMATION ----

| DATE PAYMENT DUE | TOTAL PAYMENT AMOUNT | PRINCIPAL & INTEREST PAYMENT | LOAN INTEREST RATE | CURRENT PRINCIPAL BALANCE | ESCROW BALANCE |
|---|---|---|---|---|---|
| 02-01-11 | 2,752.10 | 2,752.10 | 3.87500 | 924,225.54 | 0.00 |

ACTIVITY FOR PERIOD 01/01/01 - 07/08/11

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|---|

TRANSACTION AMOUNT / PRIN. PAID/ BALANCE / INTEREST / ESCROW PAID/ BALANCE / OTHER AMOUNT CODE/DESCRIPTION

07-05-11 00-00 633 MISC. F/C AND B/R EXPENSES
   9.60      0.00    0.00    0.00
06-06-11 00-00 633 MISC. F/C AND B/R EXPENSES
   9.60      0.00    0.00    0.00
06-02-11 00-00 633 MISC. F/C AND B/R EXPENSES
   100.00    0.00    0.00    0.00
05-16-11 02-11 152 LATE CHARGE ASSESSMENT
   0.00      0.00    0.00    0.00    137.61-1 LATE CHARGES   FEE 1
05-04-11 00-00 633 MISC. F/C AND B/R EXPENSES
   9.60      0.00    0.00    0.00
05-02-11 00-00 631 PROPERTY PRESERVATION
   6.73      0.00    0.00    0.00
04-18-11 02-11 152 LATE CHARGE ASSESSMENT
   0.00      0.00    0.00    0.00    137.61-1 LATE CHARGES   FEE 1
03-09-11 02-11 493 ARM LOAN ADJUSTMENT
   NEW INTEREST RATE: 0.03875    NEW PRIN & INT PAYMENT: 2,752.10
03-09-11 01-11 172 PAYMENT                               03-07-11
   2,752.10    235.47-  2,987.57    0.00
            924,225.54             NEW PRINCIPAL/ESCROW BALANCES
02-24-11 00-00 633 MISC. F/C AND B/R EXPENSES
   20.65     0.00    0.00    0.00
02-16-11 01-11 152 LATE CHARGE ASSESSMENT
   0.00      0.00    0.00    0.00    137.61-1 LATE CHARGES   FEE 1
01-12-11 01-11 493 ARM LOAN ADJUSTMENT
   NEW INTEREST RATE: 0.03880    NEW PRIN & INT PAYMENT: 2,752.10

AMERICAN HOME MORTGAGE SERVICING, INC
1525 SOUTH BELTLINE ROAD
COPPELL, TX 75019

TELEPHONE NO.: 1-877-304-3100

CUSTOMER ACCOUNT ACTIVITY STATEMENT

DATE 07/11/11
PAGE   2

REQ BY HCV

DONALD RAY HOPKINS
LOAN NUMBER: 0031415938

ACTIVITY FOR PERIOD 01/01/01 - 07/08/11

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|---|
| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | AMOUNT | OTHER CODE/DESCRIPTION |
| 01-12-11 12-10 172 PAYMENT | | | | | 01-11-11 |
| 2,752.10 | 243.92- 923,990.07 | 2,996.02 | 0.00 | | NEW PRINCIPAL/ESCROW BALANCES |
| 12-09-10 12-10 173 PAYMENT | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 64.12 1 LATE CHARGES FEE 1 64.12- | |
| 12-08-10 12-10 493 ARM LOAN ADJUSTMENT | | | | | |
| NEW INTEREST RATE: 0.03892 | | | NEW PRIN & INT PAYMENT: 2,752.10 | | |
| 12-08-10 11-10 172 PAYMENT | | | | | 12-07-10 |
| 2,752.10 | 442.94- 923,746.15 | 3,003.04 | 0.00 | 192.00 | NEW PRINCIPAL/ESCROW BALANCES |
| 11-10-10 11-10 173 PAYMENT | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 191.90 1 LATE CHARGES FEE 1 191.90- | |
| 11-10-10 11-10 170 PREDISTRIBUTED PAYMENT | | | | | 11-09-10 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.10 * 0.10- | |
| 11-10-10 00-00 745 CORP. ADVANCE ADJUSTMENT | | | | | |
| 0.10- | 0.00 | 0.00 | 0.00 | | |
| 11-09-10 11-10 493 ARM LOAN ADJUSTMENT | | | | | |
| NEW INTEREST RATE: 0.03903 | | | NEW PRIN & INT PAYMENT: 2,560.10 | | |
| 11-09-10 10-10 172 PAYMENT | | | | | 11-08-10 |
| 2,752.10 | 454.54- 923,303.21 | 3,014.64 | 0.00 | 192.00 | NEW PRINCIPAL/ESCROW BALANCES |
| 10-18-10 10-10 152 LATE CHARGE ASSESSMENT | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 128.01-1 LATE CHARGES FEE 1 | |
| 10-06-10 10-10 148 RETURN CHECK | | | | | |
| 0.00 | 454.54 3,014.64- 922,848.67 | | 0.00 | | NEW PRINCIPAL/ESCROW BALANCES |
| 10-06-10 11-10 493 ARM LOAN ADJUSTMENT | | | | | |
| NEW INTEREST RATE: 0.03920 | | | NEW PRIN & INT PAYMENT: 2,560.10 | | |
| 10-01-10 11-10 493 ARM LOAN ADJUSTMENT | | | | | |
| NEW INTEREST RATE: 0.03903 | | | NEW PRIN & INT PAYMENT: 2,560.10 | | |

10-01-10   10-10   171   PAYMENT
   2,560.10        454.54-   3,014.64        0.00
               923,303.21                          NEW PRINCIPAL/ESCROW BALANCES

AMERICAN HOME MORTGAGE SERVICING, INC
1525 SOUTH BELTLINE ROAD
COPPELL, TX 75019

TELEPHONE NO.: 1-877-304-3100

CUSTOMER ACCOUNT ACTIVITY STATEMENT

DATE 07/11/11
PAGE:   3

REQ BY HCV

DONALD RAY HOPKINS
LOAN NUMBER: 0031415938

ACTIVITY FOR PERIOD 01/01/01 - 07/08/11

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|
| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | OTHER AMOUNT   CODE/DESCRIPTION |

```
09-28-10  10-10  145  ADJUSTMENT
    0.00         0.00     0.00     0.00
09-14-10  10-10  493  ARM LOAN ADJUSTMENT
    NEW INTEREST RATE:  0.03920      NEW PRIN & INT PAYMENT:   2,560.10
09-14-10  09-10  172  PAYMENT                                 09-13-10
    2,560.00      465.32- 3,025.42     0.00      0.10-*
              922,848.67                  NEW PRINCIPAL/ESCROW BALANCES
09-14-10  00-00  745  CORP. ADVANCE ADJUSTMENT
    0.10          0.00     0.00     0.00
09-07-10  09-10  148  RETURN CHECK
    0.00          465.32   3,025.42-   0.00
              922,383.35                  NEW PRINCIPAL/ESCROW BALANCES
09-07-10  10-10  493  ARM LOAN ADJUSTMENT
    NEW INTEREST RATE:  0.03936      NEW PRIN & INT PAYMENT:   2,560.10
09-01-10  10-10  493  ARM LOAN ADJUSTMENT
    NEW INTEREST RATE:  0.03920      NEW PRIN & INT PAYMENT:   2,560.10
09-01-10  09-10  171  PAYMENT
    2,560.10      465.32- 3,025.42     0.00
              922,848.67                  NEW PRINCIPAL/ESCROW BALANCES
08-09-10  09-10  493  ARM LOAN ADJUSTMENT
    NEW INTEREST RATE:  0.03936      NEW PRIN & INT PAYMENT:   2,560.10
08-09-10  08-10  172  PAYMENT                                 08-06-10
    2,560.10      476.05- 3,036.15     0.00
              922,383.35                  NEW PRINCIPAL/ESCROW BALANCES
08-05-10  08-10  148  RETURN CHECK
    0.00          476.05   3,036.15-   0.00
              921,907.30                  NEW PRINCIPAL/ESCROW BALANCES
08-05-10  09-10  493  ARM LOAN ADJUSTMENT
    NEW INTEREST RATE:  0.03952      NEW PRIN & INT PAYMENT:   2,560.10
08-02-10  09-10  493  ARM LOAN ADJUSTMENT
    NEW INTEREST RATE:  0.03936      NEW PRIN & INT PAYMENT:   2,560.10
08-02-10  08-10  171  PAYMENT
    2,560.10      476.05- 3,036.15     0.00
              922,383.35                  NEW PRINCIPAL/ESCROW BALANCES
07-20-10  08-10  493  ARM LOAN ADJUSTMENT
    NEW INTEREST RATE:  0.03952      NEW PRIN & INT PAYMENT:   2,560.10
```

AMERICAN HOME MORTGAGE SERVICING, INC
1525 SOUTH BELTLINE ROAD
COPPELL, TX 75019

TELEPHONE NO.: 1-877-301-3100

CUSTOMER ACCOUNT ACTIVITY STATEMENT

REQ BY HCV

DATE 07/11/11
PAGE    4

DONALD RAY HOPKINS
LOAN NUMBER: 0031415938

ACTIVITY FOR PERIOD 01/01/01 - 07/08/11

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|---|
| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | AMOUNT | OTHER CODE/DESCRIPTION |

```
07-20-10  07-10  172  PAYMENT                                                07-19-10
           2,560.10     482.14-  3,042.24     0.00
                      921,907.30                         NEW PRINCIPAL/ESCROW BALANCES
07-16-10  07-10  152  LATE CHARGE ASSESSMENT
              0.00       0.00      0.00       0.00       128.01-1 LATE CHARGES    FEE 1
07-07-10  07-10  148  RETURN CHECK
              0.00     482.14   3,042.24-    0.00
                      921,425.16                         NEW PRINCIPAL/ESCROW BALANCES
07-07-10  08-10  493  ARM LOAN ADJUSTMENT
           NEW INTEREST RATE:  0.03962        NEW PRIN & INT PAYMENT:    2,560.10
07-01-10  08-10  493  ARM LOAN ADJUSTMENT
           NEW INTEREST RATE:  0.03952        NEW PRIN & INT PAYMENT:    2,560.10
07-01-10  07-10  171  PAYMENT
           2,560.10     482.14   3,042.24     0.00
                      921,907.30                         NEW PRINCIPAL/ESCROW BALANCES
06-01-10  07-10  493  ARM LOAN ADJUSTMENT
           NEW INTEREST RATE:  0.03962        NEW PRIN & INT PAYMENT:    2,560.10
06-01-10  06-10  171  PAYMENT
           2,560.10     487.44-  3,047.54     0.00
                      921,425.16                         NEW PRINCIPAL/ESCROW BALANCES
05-03-10  06-10  493  ARM LOAN ADJUSTMENT
           NEW INTEREST RATE:  0.03971        NEW PRIN & INT PAYMENT:    2,560.10
05-03-10  05-10  171  PAYMENT
           2,560.10     501.12-  3,061.22     0.00
                      920,937.72                         NEW PRINCIPAL/ESCROW BALANCES
04-01-10  05-10  493  ARM LOAN ADJUSTMENT
           NEW INTEREST RATE:  0.03991        NEW PRIN & INT PAYMENT:    2,560.10
04-01-10  04-10  171  PAYMENT
           2,560.10     516.27-  3,076.37     0.00
                      920,436.60                         NEW PRINCIPAL/ESCROW BALANCES
03-01-10  04-10  493  ARM LOAN ADJUSTMENT
           NEW INTEREST RATE:  0.04013        NEW PRIN & INT PAYMENT:    2,560.10
03-01-10  03-10  171  PAYMENT
```

AMERICAN HOME MORTGAGE SERVICING, INC
1525 SOUTH BELTLINE ROAD
COPPELL, TX 75019

TELEPHONE NO.: 1-877-304-3100

CUSTOMER ACCOUNT ACTIVITY STATEMENT

REQ BY HCV

DATE 07/11/11
PAGE  5

DONALD RAY HOPKINS
LOAN NUMBER: 0031415938

ACTIVITY FOR PERIOD 01/01/01 - 07/08/11

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|
| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | --------OTHER------------ AMOUNT  CODE/DESCRIPTION |

| | | | | |
|---|---|---|---|---|
| 02-01-10 | 02-10 | 171 | PAYMENT | |
| 2,560.10 | 526.55- | 3,086.65 | 0.00 | |
| | 919,399.68 | | | NEW PRINCIPAL/ESCROW BALANCES |
| 01-04-10 | 02-10 | 493 | ARM LOAN ADJUSTMENT | |
| NEW INTEREST RATE: 0.04031 | | | NEW PRIN & INT PAYMENT: | 2,560.10 |
| 01-04-10 | 01-10 | 171 | PAYMENT | |
| 2,560.10 | 572.83- | 3,132.93 | 0.00 | |
| | 918,873.13 | | | NEW PRINCIPAL/ESCROW BALANCES |
| 12-01-09 | 01-10 | 493 | ARM LOAN ADJUSTMENT | |
| NEW INTEREST RATE: 0.04094 | | | NEW PRIN & INT PAYMENT: | 2,560.10 |
| 12-01-09 | 12-09 | 171 | PAYMENT | |
| 2,560.10 | 636.43- | 3,196.53 | 0.00 | |
| | 918,300.30 | | | NEW PRINCIPAL/ESCROW BALANCES |
| 11-02-09 | 12-09 | 493 | ARM LOAN ADJUSTMENT | |
| NEW INTEREST RATE: 0.04180 | | | NEW PRIN & INT PAYMENT: | 2,560.10 |
| 11-02-09 | 11-09 | 171 | PAYMENT | |
| 2,381.49 | 908.90- | 3,290.39 | 0.00 | |
| | 917,663.87 | | | NEW PRINCIPAL/ESCROW BALANCES |
| 10-01-09 | 11-09 | 493 | ARM LOAN ADJUSTMENT | |
| NEW INTEREST RATE: 0.04307 | | | NEW PRIN & INT PAYMENT: | 2,381.49 |
| 10-01-09 | 10-09 | 171 | PAYMENT | |
| 2,381.49 | 1,015.14- | 3,396.63 | 0.00 | |
| | 916,754.97 | | | NEW PRINCIPAL/ESCROW BALANCES |
| 09-01-09 | 10-09 | 493 | ARM LOAN ADJUSTMENT | |
| NEW INTEREST RATE: 0.04451 | | | NEW PRIN & INT PAYMENT: | 2,381.49 |
| 09-01-09 | 09-09 | 171 | PAYMENT | |
| 2,381.49 | 1,125.29- | 3,506.78 | 0.00 | |
| | 915,739.83 | | | NEW PRINCIPAL/ESCROW BALANCES |
| 08-03-09 | 09-09 | 493 | ARM LOAN ADJUSTMENT | |
| NEW INTEREST RATE: 0.04601 | | | NEW PRIN & INT PAYMENT: | 2,381.49 |
| 08-03-09 | 08-09 | 171 | PAYMENT | |
| 2,381.49 | 1,241.56- | 3,623.05 | 0.00 | |
| | 914,614.54 | | | NEW PRINCIPAL/ESCROW BALANCES |
| 07-01-09 | 08-09 | 493 | ARM LOAN ADJUSTMENT | |
| NEW INTEREST RATE: 0.04760 | | | NEW PRIN & INT PAYMENT: | 2,381.49 |
| 07-01-09 | 07-09 | 171 | PAYMENT | |
| 2,381.49 | 1,335.06- | 3,716.55 | 0.00 | |
| | 913,372.98 | | | NEW PRINCIPAL/ESCROW BALANCES |

AMERICAN HOME MORTGAGE SERVICING, INC
1525 SOUTH BELTLINE ROAD
COPPELL, TX 75019

TELEPHONE NO.:  1-877-304-3100

CUSTOMER ACCOUNT ACTIVITY STATEMENT                DATE 07/11/11
                                                   PAGE   6
REQ BY HCV

DONALD RAY HOPKINS
LOAN NUMBER: 0031415938

                    ACTIVITY FOR PERIOD 01/01/01 - 07/08/11
PROCESS.    DUE     TRANSACTION     TRANSACTION             EFFECTIVE DATE
DATE.       DATE    CODE            DESCRIPTION             OF TRANSACTION
----------------------------------------------------------------------------
   TRANSACTION.  PRIN. PAID/        ESCROW PAID/ ----------OTHER--------------
   AMOUNT        BALANCE   INTEREST BALANCE      AMOUNT  CODE/DESCRIPTION
----------------------------------------------------------------------------
06-01-09  07-09  493  ARM LOAN ADJUSTMENT
   NEW INTEREST RATE:  0.04890      NEW PRIN & INT PAYMENT:    2,381.49
06-01-09  06-09  171  PAYMENT
   2,381.49   1,404.47- 3,785.96      0.00
               912,037.92                        NEW PRINCIPAL/ESCROW BALANCES
05-05-09  06-09  493  ARM LOAN ADJUSTMENT
   NEW INTEREST RATE:  0.04989      NEW PRIN & INT PAYMENT:    2,381.49
05-05-09  05-09  171  PAYMENT
   2,381.49   1,455.24- 3,836.73      0.00
               910,633.45                        NEW PRINCIPAL/ESCROW BALANCES
04-01-09  05-09  493  ARM LOAN ADJUSTMENT
   NEW INTEREST RATE:  0.05064      NEW PRIN & INT PAYMENT:    2,381.49
04-01-09  04-09  171  PAYMENT
   2,381.49   1,538.76- 3,920.25      0.00
               909,178.21                        NEW PRINCIPAL/ESCROW BALANCES
03-02-09  04-09  493  ARM LOAN ADJUSTMENT
   NEW INTEREST RATE:  0.05183      NEW PRIN & INT PAYMENT:    2,381.49
03-02-09  03-09  171  PAYMENT
   2,381.49   1,674.21- 4,055.70.     0.00
               907,639.45                        NEW PRINCIPAL/ESCROW BALANCES
02-05-09  03-09  493  ARM LOAN ADJUSTMENT
   NEW INTEREST RATE:  0.05372      NEW PRIN & INT PAYMENT:    2,381.49
02-05-09  02-09  171  PAYMENT
   2,381.49   1,840.02- 4,221.51      0.00
               905,965.24                        NEW PRINCIPAL/ESCROW BALANCES
01-02-09  02-09  493  ARM LOAN ADJUSTMENT
   NEW INTEREST RATE:  0.05603      NEW PRIN & INT PAYMENT:    2,381.49
01-02-09  01-09  171  PAYMENT
   2,381.49   1,983.37- 4,364.86      0.00
               904,125.22                        NEW PRINCIPAL/ESCROW BALANCES
12-01-08  01-09  493  ARM LOAN ADJUSTMENT
   NEW INTEREST RATE:  0.05806      NEW PRIN & INT PAYMENT:    2,381.49
12-01-08  12-08  171  PAYMENT

```
    2,381.49     2,140.27-   4,521.76      0.00
                902,141.85                          NEW PRINCIPAL/ESCROW BALANCES
11-03-08   12-08   493   ARM LOAN ADJUSTMENT
NEW INTEREST RATE:  0.06029        NEW PRIN & INT PAYMENT:     2,381.49
```

```
                  AMERICAN HOME MORTGAGE SERVICING, INC
                       1525 SOUTH BELTLINE ROAD
                          COPPELL, TX 75019

                   TELEPHONE NO.:  1-877-304-3100

                CUSTOMER ACCOUNT ACTIVITY STATEMENT            DATE 07/11/11
REQ BY HCV                                                     PAGE    7


DONALD RAY HOPKINS
LOAN NUMBER: 0031415938

                   ACTIVITY FOR PERIOD 01/01/01 - 07/08/11
PROCESS    DUE    TRANSACTION          TRANSACTION            EFFECTIVE DATE
DATE       DATE   CODE                 DESCRIPTION            OF TRANSACTION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
  TRANSACTION   PRIN  PAID/          ESCROW PAID/  - - - - - OTHER - - - - - - -
    AMOUNT      BALANCE    INTEREST  BALANCE   AMOUNT  CODE/DESCRIPTION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
11-03-08  11-08  171  PAYMENT
    2,215.34    2,433.32-  4,648.66      0.00
                 900,001.58                        NEW PRINCIPAL/ESCROW BALANCES
10-01-08  11-08  493  ARM LOAN ADJUSTMENT
    NEW INTEREST RATE:  0.06215         NEW PRIN & INT PAYMENT:   2,215.34
10-01-08  10-08  171  PAYMENT
    2,215.34    2,562.50-  4,777.84      0.00
                 897,568.26                        NEW PRINCIPAL/ESCROW BALANCES
09-02-08  10-08  493  ARM LOAN ADJUSTMENT
    NEW INTEREST RATE:  0.06406         NEW PRIN & INT PAYMENT:   2,215.34
09-02-08  09-08  171  PAYMENT
    2,215.34    2,713.83-  4,929.17      0.00
                 895,005.76                        NEW PRINCIPAL/ESCROW BALANCES
08-01-08  09-08  493  ARM LOAN ADJUSTMENT
    NEW INTEREST RATE:  0.06629         NEW PRIN & INT PAYMENT:   2,215.34
08-01-08  08-08  171  PAYMENT
    2,215.34    2,855.19-  5,070.53      0.00
                 892,291.93                        NEW PRINCIPAL/ESCROW BALANCES
07-10-08  08-08  493  ARM LOAN ADJUSTMENT
    NEW INTEREST RATE:  0.06841         NEW PRIN & INT PAYMENT:   2,215.34
07-10-08  07-08  171  PAYMENT
    2,215.34    3,013.08-  5,228.42      0.00
                 889,436.74                        NEW PRINCIPAL/ESCROW BALANCES
07-02-08  07-08  145  ADJUSTMENT
     0.00         0.00       0.00        0.00
07-02-08  07-08  170  PREDISTRIBUTED PAYMENT
   13,292.04   21,284.26- 34,576.30      0.00
                 886,423.66                        NEW PRINCIPAL/ESCROW BALANCES
```

## PROOF OF SERVICE BY MAIL/FACSIMILE

I declare that I am employed in the County of Santa Cruz, California; that I am over the age of eighteen and am not a party to the foregoing action. My business address is 7960-B Soquel Drive, No. 291, Aptos, CA 95003.

On the date shown below, I served the following document(s):

### SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

on each person named below by placing a copy in an envelope addressed as shown below and placing the envelope for collection and mailing on the date and at the place shown above following our ordinary business practices. I am readily familiar with this business practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid and as set forth in the accompanying facsimile transmission page, if any.

Rachel M. Doller, Esq./Sherrill Oats, Esq.
Smith Dollar, PC
404 Mendocino Avenue, Second Floor
Santa Rosa, CA 95401
Fax: 707-522-1101
For: American Home Mortgage Servicing, Inc.

Stuart B. Wolfe, Esq./Kimberley A. Paese, Esq.
Wolfe & Wyman, LLP
2175 North California Blvd., Suite 645
Walnut Creek, California 94596-3502
Fax: 925-280-0005
For: Citibank

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that this declaration was executed on July 5, 2012 in Santa Cruz County, California.

Donald Charles Schwartz